**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

LINDA RISNER,                                             Case No. 1:11-cv-36

              Plaintiff,                            Spiegel, J.
                                                         Bowman, M.J.
   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

             Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Linda Risner filed this Social Security appeal in order to challenge the Defendant's determination that she is not disabled.   *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes.   As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

### I. Summary of Administrative Record

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on October 26, 2006, alleging a disability onset date of September 4, 2006 (Tr. 116-121) based upon a combination of physical and mental impairments.   Plaintiff's application was denied initially and upon reconsideration, and she timely requested an evidentiary hearing.   On January 15, 2010, following an administrative hearing held on September 14, 2009 at which Plaintiff appeared with counsel, Administrative Law Judge ("ALJ")

David A. Redmond issued a decision concluding that Plaintiff was not disabled. (Tr. 10-21). The Appeals Council denied review; therefore, the ALJ's decision remains as the final decision of the Commissioner. Plaintiff filed the instant complaint in order to challenge the ALJ's decision.

Plaintiff was 49 at the time of her hearing, and had worked as a secretary at a hospital for 13 years up until the date she alleges disability. In specific "Findings" representing the rationale of his decision, the ALJ determined that Plaintiff "has the following severe impairments: coronary artery disease with residuals of bypass surgery; chronic obstructive pulmonary disease; major depressive disorder; and anxiety disorder." (Tr. 13). However, the ALJ determined that none of the impairments or combination thereof met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, such that Plaintiff was entitled to a presumption of disability. (*Id.* at 16). Rather, the ALJ determined that Plaintiff retained the following residual functional capacity ("RFC") to perform a limited range of light work, subject to the following additional limitations:

> [S]he is limited to jobs that would require her to lift no more than a maximum of 10 pounds and which would afford her the opportunity to sit for 15 minutes of each hour. She is further limited to simple tasks that would involve no more than minimal personal contacts. She should not be expected to perform jobs with production quotas.

(Tr. 16-17). Based upon testimony of a vocational expert, the ALJ determined that Plaintiff could perform a significant number of jobs in the national economy. (Tr. 20). Therefore, the ALJ determined that Plaintiff was not under a disability. (Tr. 21).

In her statement of errors, Plaintiff argues that the ALJ erred when he: 1) failed to specify why Plaintiff does not meet or equal a Listing; 2) failed to give adequate weight

to Plaintiff's treating physician in assessing the extent of Plaintiff's psychological impairment; 3) improperly assessed Plaintiff's credibility.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for Disability Insurance Benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference

from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v.  Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

**B.  Specific Errors**

**1.  Failure To Specify Why Plaintiff Does Not Meet or Equal a Listing**

Plaintiff first argues that remand is required because the ALJ "summarily concluded" that she did not meet or equal a Listing, without identifying which Listing or Listings he considered, and without offering a detailed explanation as to how he determined that no Listing was met.  Both the Third and the Fifth Circuit Courts of Appeals have held that a blanket statement that a claimant does not have an impairment or combination of impairments that meets or medically equals any Listing is legally insufficient to comply with Step 3 of the sequential analysis, in the absence of additional analysis that provides a basis for the conclusion.  *See, e.g., Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-120 (3rd Cir. 2000).

To date, no published Sixth Circuit case requires an ALJ to "specify" which numerical Listings he or she has considered in detail.  Nor does controlling case law require an ALJ to articulate in any particular manner "which criteria Plaintiff failed to meet or equal."  (*See* Plaintiff's argument, Doc. 10 at 14).  As Defendant points out, long-standing published Sixth Circuit case law requires only minimal articulation at Step 3 of the sequential analysis, *see Price v. Heckler*, 767 F.2d 281, 284 (6th Cir. 1985).  So long as the ALJ's decision as a whole articulates the basis for his or her conclusion, it may be affirmed.  *See Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985).  Indeed, the undersigned Magistrate Judge has recommended affirming many administrative decisions wherein the ALJ did not specify either the precise Listing that he or she considered at Step 3, or undertake a detailed analysis of why the

particular claimant did not meet that Listing. In most of the prior cases before the undersigned, however, no particular error at Step 3 has been alleged, resulting in waiver.

The Defendant argues that waiver exists in this case as well, in that Plaintiff's Statement of Errors fails to identify which Listing it was that the ALJ failed to consider. As such, Plaintiff's claim is arguably so cursory as to be waived. *See United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996). Defendant also relies upon general black letter law that it remains the Plaintiff's burden at Steps 1 through 4 to prove disability, including by showing that his or her impairment meets or medically equals all specified medical criteria for a Listing. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2002); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391 (6th Cir. 1999).

Plaintiff has attempted to remedy any deficiency in her reply memorandum, by identifying for the first time Listings 4.04 (ischemic heart disease), 12.04 (affective disorder), and 12.06 (anxiety disorder) in a footnote. Still, Plaintiff fails to offer any explanation of how the evidence might show that she meets or medically equals any of these newly identified Listings.

The brevity of Plaintiff's argument favors the Defendant, although the brevity of the ALJ's analysis does not. Similarly, whereas older published Sixth Circuit case law favors the Defendant, case law from other Circuits and recent unpublished Sixth Circuit case offers some support to Plaintiff. In *Reynolds v. Comm'r of Soc. Sec.,* 424 Fed Appx. 411, 2011 WL 1228165 *4 (6th Cir. April 1, 2011), a Sixth Circuit panel agreed with the decisions of the Third and Fifth Circuits and held that an ALJ must in fact "give an explained conclusion" as to why a claimant's impairment does or does not meet each

potentially relevant Listing.  Yet, even the Fifth Circuit case cited by *Reynolds* and relied upon by Plaintiff in this case holds that a reviewing court need not remand where it is clear that any error in failing to identify a Listing was harmless.  *See Audler v. Astrue*, 591 F.3d at 448 ("Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected")(internal quotation marks and citation omitted).

In this case, to the extent not waived, any error was harmless.  While this Court declines to engage in a "guess the relevant Listing" analysis, Listing 4.04 generally requires demonstration of specific heart abnormalities via treadmill or other objective testing.  Here, objective testing showed "no exercise induced chest pain" and "normal sinus rhythm."  (Tr. 427, 496).

Likewise, mental impairment Listings 12.04 and 12.06 require a claimant to show specified "A criteria," consisting of the "symptoms, signs, and laboratory findings" of the referenced mental impairment.  *See generally* 20 C.F.R. §404.1520a.  The Court assumes for purposes of argument that Plaintiff is able to meet the referenced A criteria.  However,  Plaintiff also must show the existence of "B criteria" or "C criteria" in order to satisfy either Listing 12.04 or 12.06.  To satisfy the "B criteria" of either Listing, Plaintiff was required to show that she had "marked" restrictions in at least two out of four specific functional areas, or alternatively, "marked" restrictions in one of the areas together with repeated episodes of decompensation, each of extended duration.  Without reference to specific Listings 12.04 or 12.06, the ALJ nevertheless made clear findings concerning the "B Criteria," concluding that Plaintiff has only "mild restriction of activities of daily living, moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes

of decompensation." (Tr. 16). The ALJ also made findings relevant to the Plaintiff's failure to establish "C Criteria," finding "no evidence of an inability to function outside of a highly supportive environment or that routine changes ...would result in decompensation," and "no evidence of a complete inability to function outside the area of her home." (*Id.*). In short, despite the lack of a reference to particular Listings, the ALJ's analysis is sufficient for this Court to conduct a review and find substantial evidence to support the determination that Plaintiff did not meet or equal the requisite Listing criteria. *Contrast Miller v. Comm'r of Soc. Sec.*, 181 F. Supp.2d 816, 820 (S.D. Ohio 2001)(directing remand where ALJ's decision contained no discussion at all, and plaintiff presented "evidence suggesting that he was disabled under Listing §11.03" based upon objective EEG findings, and testimony concerning the frequency and severity of his epileptic seizures).

### 2. Failure to Properly Weigh Treating Source Medical Opinion

In her second assertion of error, Plaintiff contends that the ALJ erred by failing give adequate weight to the opinions of her treating physician, Dr. Avera, concerning Plaintiff's residual functional capacity and disability. In general terms, regulations require an ALJ to give the opinions of treating physicians "controlling" weight. However, both the determination of a claimant's RFC and the ultimate disability determination are "reserved to the Commissioner." 20 C.F.R. §404.1527(e). An ALJ must carefully consider all medical opinions concerning a claimant's functional capacity, but where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994).

Only the opinion of a treating physician is generally entitled to controlling weight, but the opinion of a consulting physician who has examined the plaintiff will be given more weight than that of a non-examining consultant. *See* 20 C.F.R. §404.1527(d)(1) and (d)(2). These regulatory presumptions remain subject to individual variations. For instance, "if the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for his rejection." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *see also* 20 C.F.R. § 404.1527(d)(2). An ALJ's failure to provide an adequate explanation for according less than controlling weight to a treating source may be excused if the error is harmless or *de minimis*, such as where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 409 (6th Cir. 2009)(*quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

Plaintiff argues that the ALJ improperly rejected Dr. Avera's opinions concerning the combined impact and interaction of Plaintiff's mental and physical impairments, as expressed in Dr. Avera's opinions and treatment notes. Dr. Avera completed a Physical Residual Functional Capacity Questionnaire on August 18, 2009 in which she opined that Plaintiff is "incapable of even 'low stress' jobs" based primarily upon the facts that she "cries frequently during routine office visit[s]" and "admits to hiding in room at home so she won't yell at family members." (Tr. 549).[1]

It is clear from this Court's review of the form that Dr. Avera's completion of the RFC questionnaire was perfunctory, to the extent that little explanation is offered for her

---

[1]One page of this form appears to be missing, in that the form skips from question 15(g) to 15(m). (Tr. 550-551). Neither party references any information from the missing page.

opinions. As general support for her opinion that Plaintiff is incapable of any work, Dr. Avera lists diagnoses of coronary artery disease, ovarian cyst, anxiety and depression, and COPD. (Tr. 548). The ALJ recognized most of Dr. Avera's listed diagnoses as "severe" impairments, with the exception of the ovarian cyst. Plaintiff does not challenge that finding, nor does Plaintiff suggest any specific physical limitations other than those found by the ALJ resulting from her physical impairments.

In addition to Plaintiff's physical symptoms of "pain in lower quadrant, chest pain, [and] shortness of breath upon exertion," Dr. Avera described emotional symptoms of "crying, and avoiding people." (Tr. 548). Dr. Avera also opined that Plaintiff would miss work more than four days each month due to her psychiatric symptoms, and stated that Plaintiff suffers from "severe depression" that "limits [her] ability to work with others or ability to concentrate." (Tr. 17, 551). Plaintiff testified that she was disabled primarily due to "stress, afraid of hurting other people." (Tr. 34). Thus, the focus of Plaintiff's assertion of error is on the ALJ's rejection of Dr. Avera's opinion that Plaintiff's psychological impairments were disabling.[2]

### a. Limitations From Mental Impairments

The ALJ determined that Dr. Avera's opinions were entitled to "little weight" for the following reasons:

> In deciding whether or not to adopt the treating source's opinion in this situation, the following factors are to be considered along with any other

---

[2] Plaintiff articulates the error as one in which the ALJ failed "to properly weigh Dr. Avera's ...opinion and ..fail[ed] to properly account for Plaintiff's psychological impairments in the RFC." (Doc. 10 at 15).

appropriate factors: the examining relationship, the treatment relationship in terms of its frequency and duration, supportability, consistency, and specialization. *Particular attention is to be given to the consistency of the opinion with other evidence, the qualifications of the source, and the degree to which the source offers supporting explanations for the opinion....*

When evaluated under these guidelines, the conclusion of Dr. Avera that the claimant is disabled/unemployable cannot be given controlling, or even deferential, weight. Chart notes from the claimant's cardiologist indicate that her cardiac condition is stable. Dr. Avera had reported that the claimant would be significantly limited due to her psychiatric complaints and symptoms, but she is a family physician, not a psychiatrist, and therefore is not a mental health professional. Her medical opinion is inconsistent with that of a mental health professional who examined the claimant. *As Dr. Avera's medical opinion is not supported by the medical record and is inconsistent with other medical evidence of record*, it is afforded little weight.

(Tr. 17-18)(emphasis added).

Other than Dr. Avera's conclusory statements that Plaintiff's "frequent crying" and avoidance of family members limits her functional abilities to concentrate or work with other people, Dr. Avera offered no particular explanation of any limitations resulting from Plaintiff's depression. Dr. Avera completed only a physical RFC form, not a mental RFC form that offers more detailed analysis of a claimant's work-related mental abilities. As stated above, the ALJ relied upon other evidence in the record to specifically evaluate Plaintiff's functional limitations under "B" and "C" criteria of the Listings for anxiety and depression. In so doing, the ALJ found only mild and moderate restrictions, rather than limitations that could be termed "marked" or severe (Tr. 16). The ALJ looked at the two areas referenced by Dr. Avera -Plaintiff's ability to concentrate, and her ability to work with others- but determined only that Plaintiff should be limited "to simple tasks that would involve no more than minimal personal contacts" and not that Plaintiff was disabled from all employment.

In reviewing the consistency of Dr. Avera's opinions with the record as a whole, the ALJ specifically discussed two consultative psychological evaluations performed in January and July 2007 by James Rosenthal, PsyD, Plaintiff's reports of her daily activities, inconsistencies in Plaintiff's testimony, and evidence that Plaintiff has never sought any mental health treatment (other than medications from Dr. Avera), with no emergency room treatment or hospitalization for her psychiatric complaints.

Plaintiff argues that the ALJ should not have rejected Dr. Avera's opinion "only" on the ground that she is not a psychiatrist (Doc. 10 at 17) but that is not what the ALJ did. Although an ALJ is entitled to consider a treating source's area of specialty, *see* 20 C.F.R. § 404.1527(d)(2), in this case the ALJ specifically listed many other factors he considered in evaluating Dr. Avera's opinions, all of which were drawn directly from the relevant regulatory framework. *See* 20 C.F.R. §404.1527(d) and (f); Soc. Sec. Ruling 86-2p.

Plaintiff also claims that the observations of Plaintiff's treating cardiologist, Dr. Brown, were consistent with Dr. Avera's opinion that Plaintiff was disabled due primarily to her mental impairments. However, Dr. Brown's clinical notes say nothing about the degree of functional limitation that Plaintiff might experience. In fact, only some of the records are consistent with any symptoms of depression and anxiety; other records from Dr. Brown during the same time period explicitly deny *any* "depression, anxiety, or agitation." (Tr. 499, 539, 544).[3] All other medical opinions of consulting experts, both

_____

[3] One of Dr. Brown's records, dated June 13, 2008, reflects that Plaintiff had not followed up with him in 1 ½ to 2 years, but was there for "routine follow-up" "prior to her returning to Florida for two months to be with her family." (Tr. 497).

examining psychologists and non-examining reviewing psychologists, also clearly disagreed with the extreme limitations suggested by Dr. Avera.

Plaintiff's primary argument rests on a hypothesis that her mental condition deteriorated over time to the degree that she became disabled. As support, she argues that Dr. Rosenthal's diagnoses were more severe, and his conclusions more limiting, at the July 2007 consultation than at the first examination in January 2007. (*See* Tr. 434, 474). Plaintiff points out that Dr. Avera rendered her opinion in August 2009, at a time that Plaintiff's mental impairment had allegedly worsened. Plaintiff asserts: "[W]hile in early 2006 and perhaps even through mid-2007, Plaintiff may have had some ability to deal with stress, this ability decreased as time passed, so that by the time of the hearing, she no longer had any ability to tolerate stress." (Doc. 10 at 18).[4]

Other than Dr. Avera's conclusory assessment and Plaintiff's own testimony, however, Plaintiff offers no evidence to support her assertion that recent psychological "stress" results in functional limitations so severe that she is entitled to a finding of disability. Certainly, no examining or consulting psychologist found that degree of functional limitation. To the contrary, both examining consultant Dr. Rosenthal and a non-examining reviewing consultant found her ability to tolerate work stress and pressures to be no more than "moderately" impaired, with the majority of work-related abilities "not significantly limited." (Tr. 490-492).

Plaintiff focuses heavily on the "chronology of her declining health," (Doc. 10 at 18), theorizing that her mental impairments became significantly worse over time due to

---

[4]Plaintiff's argument implies that she was not disabled as of her claimed onset date in September 2006.

various cardiac symptoms, surgery for an ovarian cyst in 2007, appendicitis and a reported diagnosis of syncope in December 2008, a diagnosis of hypoxemia requiring nocturnal oxygen beginning in February 2009, and a brief hospitalization for cardiac catheritization in March 2009.[5] Ultimately, however, Plaintiff's argument rests on conjecture and speculation rather than objective evidence, clinical records, or other evidentiary support. While the record confirms that Plaintiff suffered from a variety of physical ailments over time, many of the referenced events (like the ovarian cyst) caused no lingering impairment and none caused any limitation not physically accounted for by the ALJ. Notably, no clinician (including Dr. Avera) has offered any testimony or opinion that the listed physical events had any significant impact on Plaintiff's mental impairments or psychological limitations. *Contrast Carradine v. Barnhart*, 360 F.3d 751 (6th Cir. 2004)(remanding where plaintiff suffered from somatization disorder, and multiple records supported finding of severe physical pain worsened by psychological impairments). Indeed, notwithstanding the credibility issues discussed below, not even Plaintiff herself offered any clear testimony that her psychological issues significantly worsened over time based upon the chronology of her physical health issues. Perhaps there is "obvious interplay of stress and her cardiac problems" as Plaintiff now argues, (Doc. 10 at 18), but the ALJ cannot be faulted for failing to reach the conclusion that Plaintiff now advocates without the presentation of *any* supporting evidence.

---

[5]To emphasize this point, Plaintiff includes a two and a half page time-line of Plaintiff's "hospitalizations and her development of additional impairments." (Doc. 10 at 8). However, nearly half of the time-line concerns physical conditions that pre-date Plaintiff's disability onset date by as much as three and a half years.

Plaintiff also now asserts - without any citation or evidence that this Court can determine - that the "workplace violence" for which she was fired from her position in 2006 was the direct result of Plaintiff's mental impairment and thus provides further support for her claim, rather than undermining Plaintiff's claim, as the ALJ found. Of course, Plaintiff's latest spin on her termination is contrary to her prior statements to Dr. Rosenthal, to whom she reported that she was a good worker with no problems with attendance or relating to bosses. (Tr. 430). In fact, Plaintiff herself provided no testimony at the hearing to support her present theory that she was fired based upon her mental illness. Where the evidence supports the ALJ's analysis, this Court will not reverse merely because the same evidence theoretically can be interpreted to support Plaintiff's claim.

### b. Physical Limitations

Despite her emphasis on psychological symptoms, Plaintiff briefly argues that her physical impairments, combined with "stress," support Dr. Avera's opinion that she cannot sustain work on a full-time basis. For example, at her January 2007 examination with Dr. Rosenthal, Plaintiff stated that she needed to take rests after "about an hour" of housekeeping, laundry and cooking, due to her cardiac symptoms. (Tr. 430). By July 2007 she reported that she could not perform housework "because of chest pains." (Tr. 471). At her hearing, Plaintiff testified that she averages 13 hours of sleep per day, and naps daily (Tr. 39-40). Again, however, the fact that some evidence may be found to be consistent with Plaintiff's claimed physical inability to work does not refute the substantial body of evidence that supports the ALJ's decision.

For example, in January 2007, Plaintiff reported that she walked on a treadmill for 30 minutes a day, did household chores, cared for herself, understood finances, attended a two-hour weekly church service, and socialized and participated in a weekly craft activity. (Tr. 430-31). Six months later, she reported to the same examiner that she does not attend church or socialize, but admitted running errands a "couple times a week." (Tr. 471). Plaintiff also admitted that her cardiologist had encouraged her to exercise, a statement inconsistent with her assertion that she is barely able to walk around her small yard and cannot lift more than two liter bottles. (Tr. 36-37). In nearly all cases, an evaluation of a claimant's daily activities is relevant to the evaluation of subjective complaints and ultimately, to the determination of disability. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain."); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 536 (6th Cir. 2001)(ALJ may consider claimant's testimony of limitations in light of other evidence of claimant's ability to perform tasks such as walking, going to church, going on vacation, cooking, vacuuming and making beds).

Plaintiff's medical records strongly support the ALJ's physical RFC findings. Although Plaintiff's case at the administrative level initially focused on her cardiac symptoms, she has not required cardiac surgery since 2003, several years before she stopped working. (Tr. 19, 220-21, Tr. 430). A December 2006 cardiac stress test showed good aerobic ability, a normal response in heart rate and blood pressure, and no chest pain. (Tr. 426-428). Plaintiff's cardiologist has described her cardiac disease as "stable." (Tr. 466). Similarly, while Plaintiff testified that she does not drive or work

in part due to syncope (Tr. 32), the record reflects only two such episodes, one of which occurred more than a year *before* she stopped working (Tr. 309). An EKG dated December 18, 2008 showed a normal sinus rhythm (Tr. 496). In March 2009, Plaintiff complained of episodes of "chest burning...over the past month" with activity, relating that she had been "trying to rake" but had to stop after 15 minutes due to her chest symptoms. (Tr. 542). However, in June 2009, Plaintiff's cardiologist noted that Plaintiff denied chest pain, tightness or heaviness (Tr. 537).

Concerning Plaintiff's testimony that she is frequently short of breath, the medical record showed only a very mild pulmonary defect (Tr. 513). While Plaintiff does require night-time oxygen, her oxygen saturation level was normal during the daytime on room air. (Tr. 19, 506, 514). In addition, the ALJ pointed out that Plaintiff continued to smoke against medical advice.[6] (Tr. 19).

The ALJ's conclusion that Plaintiff could perform light work is also supported by the non-examining consultants' opinions, Dr. Das and Dr. Morton, who concluded that Plaintiff could perform light work based upon a records review, (Tr. 454, 494), as well as by the February 15, 2007 opinion of a non-examining consulting psychologist, Dr. Finnerty (Tr. 438). In short, the record as a whole exhibits "substantial evidence" to support the ALJ's rejection of Dr. Avera's disability opinion on grounds that it was inconsistent with all other medical evidence of record, most of which was provided by treating cardiac and examining psychological specialists. In addition, this Court's review of Dr. Avera's conclusions reflects an opinion that contains so little explanation that it

---

[6]Plaintiff protests that this finding was in error. In one record, Plaintiff denied "ethanol, tobacco or illicit drug use." (Tr. 495). However, other medical records including recent ones reflect "tobacco abuse," not "prior tobacco abuse." (Tr. 49, 537, 542).

17

comes close to being "so patently deficient that the Commissioner could not possibly credit it." *Blakley,* 581 F.3d at 409 (*quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6ᵗʰ Cir. 2004)).  Dr. Avera's clinical records are brief and do not support the extreme limitations she states.  Many of the records refer only to brief physical complaints, and few note any details or describe symptoms other than an actual diagnosis of anxiety and/or depression.[7]

Plaintiff argues that the facts that she has received only "conservative" cardiac treatment, and that her cardiologist described her condition as "stable," should not have been used against her.  However, a failure to seek aggressive treatment is a legitimate factor to be considered in assessing the credibility of subjective complaints. *See* 20 C.F.R. §404.1529(c)(3)(iv)-(v)(ALJ can consider medication and other treatment when assessing credibility).  Plaintiff concedes that her cardiac disease might permit her to engage in light work (Doc. 14 at 6), but argues that her pulmonary impairment together with her mental impairments, means she is more limited.  She acknowledges normal pulse oximetry readings at room air, but argues that those readings "were taken while Plaintiff was at rest" and therefore do not accurately reflect the exertion of work.  (Doc. 14 at 6). However, in the absence of medical evidence, Plaintiff's arguments reflect nothing more than unsupported theory.

### 3. Failure to find Plaintiff Credible

In her last claim, Plaintiff argues that Dr. Avera's opinions were supported by Plaintiff's subjective complaints, which the ALJ found not to be fully credible.  A disability claim can be supported by a claimant's subjective complaints, as long as there is

---

[7]In addition to the scarcity of clinical notes supporting functional limitations, Dr. Avera never conducted any functional tests that would relate to Plaintiff's functional abilities.

objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476 (citations omitted). As other Sixth Circuit cases have stated, "[s]ubjective complaints of 'pain or other symptoms shall not alone be conclusive evidence of disability.'" *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)(quoting 42 U.S.C. §423(d)(5)(A)).

An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392.

In this case, the ALJ determined that Plaintiff's testimony that she could not sustain full-time employment was "not supported by substantial objective medical evidence or clinical findings," and was "less than credible." (Tr. 19). The ALJ cited numerous inconsistencies in Plaintiff's testimony and the record as a whole. For example, the ALJ noted that Plaintiff did not stop working due to her impairments, but rather, testified that she was fired from her last position due to workplace violence. (Tr. 12, 429). She informed Dr. Rosenthal that she would still be working had she not been

fired. (Tr. 431). In January 2007, Dr. Rosenthal viewed Plaintiff's effort and persistence on the psychological tests he administered as only "fair," (Tr. 431), although in July he described her effort and persistence as "fairly good." (Tr. 472). In addition, "[s]he told an examining source [in January 2007] that she had applied for jobs since September 2006, but had not been hired. Looking for work is inconsistent with the claimant's allegations that she is disabled." (Tr. 18; *see also* Tr. 33, 429).

In addition to the above inconsistencies, at the hearing Plaintiff "testified that she had no friends and rarely left the house, yet she told an examining source that she attended religious services on a weekly basis and socialized with friends at church; they get together once a week to make crafts for the church." (Tr. 19). The ALJ described Plaintiff as "an inconsistent historian of questionable reliability," explaining:

> When first evaluated by Dr. Rosenthal in January 2007, the claimant reported that she had completed the 11th grade. She further reported that she often skipped school to hang out with her friends....When again seen seven months later, she stated that she had completed the 9th grade. She further stated that she had few friends in school and was very quiet. ...When first evaluated, the claimant reported that she had never been verbally, physically, or sexually abused as a child....At the second evaluation, she reported that her mother had been verbally and physically abusive towards her.... When first seen, she reported attending church services regularly. She socialized with friends at church and got together with them once a week to make crafts for the church.... At the second evaluation, she reported that she did not attend church and had no friends.....

(Tr. 19).

While the ALJ's credibility determination was based upon many factors, he also discounted Plaintiff's subjective reports of disabling "stress" based upon the fact that Plaintiff "has never sought mental health treatment." (Tr. 19). Plaintiff argues that he should not have relied upon the latter fact because she was "forced" to limit her mental

health treatment to her primary care physician "for the majority of the time in question due to a lack of health insurance." (Doc. 10 at 21). In fact, Soc. Sec. Ruling 96-7p requires an adjudicator to consider any reasons offered for a failure to pursue treatment, including mental illness or a lack of insurance. However, even Plaintiff admits that she was not without health insurance during the entire period of her claimed disability. Plaintiff failed to seek psychiatric treatment after she obtained insurance in January 2009 (Tr. 38), and the record contains no evidence that she ever sought free or low-cost mental health treatment.

Plaintiff additionally argues that the ALJ was wrong to cite her inconsistent statements when judging her credibility. Rather than suggesting less than full candor, Plaintiff now claims that her contradictory statements reflect nothing more than the severity of her mental impairments and alleged problems with memory and concentration. (Doc. 10 at 21). However, there is no medical evidence whatsoever that Plaintiff suffers from any significant memory impairment, and psychological functional assessments noted relatively few limitations concerning concentration and persistence. (Tr. 490). Plaintiff also suggests that some of the inconsistencies in her reports reflect a worsening of her symptoms, because she no longer socialized or attended church by the time of her second evaluation in July 2007. Again, however, the record is equivocal and does not necessarily support this revised explanation. Dr. Rosenthal's second report, dated just six months after the first, does not state that Plaintiff reported having "given up" her previous activities; rather, she simply denied that she engaged in them.

Plaintiff's attempts to explain away other inconsistencies is similarly unavailing. For example, Plaintiff suggests that the fact that she applied for jobs after her claimed

disability onset date was only "because she initially believed she could work, or could perhaps work part-time." (Doc. 10 at 20). Although an unsuccessful work *attempt* may support a more favorable credibility assessment, there is also support for the ALJ's adverse determination on the facts presented. *See Castile v. Astrue*, 617 F.3d 923, 930 (7th Cir. 2010). In addition, there is no evidence that Plaintiff sought only part-time work.

Plaintiff now claims that her statements that she walked on a treadmill 30 minutes daily do not reflect "whether Plaintiff walked on the treadmill for 30 minutes straight, or whether she broke it up into smaller segments throughout the day." (Doc. 14 at 4). She argues that the record does not clearly reflect "how often and for how long she socialized or made crafts." (Doc. 14 at 4-5). Needless to say, Plaintiff's arguments are speculative at best and wholly unsupported by any evidence of record. The ALJ's interpretation of the evidence presented was reasonable and supported by substantial evidence in the record as a whole; therefore his credibility determination reflects no reversible error.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** the decision of the Commissioner to deny Plaintiff DIB benefits be **AFFIRMED** and this case be **CLOSED**.

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

LINDA RISNER,                                                    Case No. 1:11-cv-36

          Plaintiff,                                          Spiegel, J.
                                         Bowman, M.J.

     v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).